## SUPREME COURT—IN BANCO.

### JULY TERM—1873.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

THE MINISTER OF THE INTERIOR *vs.* HACKFELD ET AL.—BILL OF EXCEPTIONS,—ACTION TO RECOVER FOR STORAGE OF GOODS IN THE GOVERNMENT WAREHOUSE.

IN a contract giving the free use of a storehouse, but reserving the right to charge storage for merchandise "which shall not be the subject of steamship transportation." HELD that goods which are in fact shipped by sailing vessels, are chargeable. WIDEMANN, J., dissenting.

The defendants placed in evidence a contract between the plaintiff and a foreign steamship company of which they are agents, wherein it is agreed that the Minister of the Interior shall set apart the government storehouse and wharf for the

The Minister of the Interior *v.* Hackfeld et al.

exclusive use of the company; also, that "it is expressly understood that storage may be charged for merchandise which shall not be the subject of steamship transportation, no preference being given to particular shippers." Jury was waived, and the Court, WIDEMANN, J., found that the defendants had stored 1200 tons of sugar in the house with the intention of forwarding by steamer, but which were shipped by packets, and gave judgment for the defendants.

OPINION OF THE MAJORITY OF THE COURT BY HARTWELL, J.

If the contract does not exempt the steamship company from paying storage on goods like these, of course it exempts no one therefrom. The contract gives the company the exclusive use of the wharf and warehouse for steamship purposes, with the sole object therein specified of encouraging steam navigation, and not sailing vessels. It reserves the right to charge storage for merchandise "which shall not be the subject of steamship transportation." We think it is evident that this right is reserved to the Minister of the Interior, and is not granted to the company, since the expressed object of the contract is to grant privileges for steamship purposes, and there is nothing which leads us to infer that the company was to have free storage of packet goods with the right of charging others therefor.

The only question then is, whether goods sent on packets are exempt from charges by reason of the shipper's intention to ship by steamer. The words, "merchandise which shall not be the subject of steamship transportation" may mean, goods not susceptible of this mode of conveyance, goods not intended to be so conveyed, and goods not conveyed by steamers. The first construction makes no goods liable and is at once dismissed. The second construction is open to the objections that the shipper's intention concerning the goods cannot be ascertained until he ships them, and may often be changed. Goods for packet may be stored for months, and

finally shipped by steamer. If such goods were exempt from charges during all of such time, this would open the warehouse free to all who at any time intend to ship by steamer. On the whole, we do not think this construction reasonably can be presumed to have been contemplated by the parties. The construction we place on the contract is, that it gives the company free use of the wharf and storehouse for its steamers and for goods shipped thereon, and that it permits the Minister of the Interior to charge all persons, agents of the company or not, for storage of other goods. We think this view is consistent with the main object expressed in the contract.

The exceptions are sustained and a new trial is ordered.

WIDEMANN, J., dissenting: In this suit the Minister of Interior claims from the defendants $655.66 under an implied contract for storage of goods in a certain warehouse the property of the government. The defendants produced an express contract of the Minister of Interior with William H. Webb and Benjamin Holladay, partners under the style of the "United States, New Zealand and Australian Mail Steamship Line," for whom they were acting as agents. The 4th Section of this contract gives to the company the exclusive use of this warehouse, and further provides that storage may be charged upon all merchandise which is not "the subject of steamship transportation."

With great deference to the opinion expressed by the majority of this Court, I feel obliged to dissent from them.

I must hold that, when the agents of this steamship company received goods from A. B. or C.,—their own goods, if you please,—for the purpose of forwarding them by the steamer, and placed them in the said warehouse, the very placing of these goods in the steamer's warehouse made them the subject of steamship transportation as far as the owners were concerned. If therefore anyone does become liable it must be the company under the contract.

The Minister of the Interior *v.* Hackfeld et al.

The Attorney General for the plaintiff contends that wording in Section 4, "merchandise which is not the subject of steamship transportation," is to be interpreted to mean "merchandise which does not go forward by steamer." The intention of the parties to a contract, as expressed or inferred, must be the ground and principle of every decision respecting its operation and extent, and the grand object of consideration in every question with regard to its construction. 2 Pothier, p. 30.

Was it then the intention of both parties to this contract that the words "merchandise which is not the subject of steamship transportation" should mean merchandise which *does not go forward by steamer?* I am not sure that the plaintiff, when he made this contract, applied this construction to those words, because the contract in the preamble says that it is made with a view to the encouragement and extension of steam communication between San Francisco, Honolulu and ports in Australia and New Zealand, and the charge of $655.66 for storage for five months in the warehouse in question, does not seem to me to have any tendency at all in that direction.

At the time of the signing of the contract the steamers brought from New Zealand generally full cargoes with through bills of lading; the steamers from California were smaller than those that ran to the South and could not carry the freight that the latter brought; still smaller steamers came afterwards from California, one especially, that could not carry any heavy freight (sugar) at all. It may fairly be presumed that Mr. Webb knew his own business, and knowing it, could it be supposed that he would have ventured under this construction to place any goods into this warehouse when he knew to a certainty that he could not carry them?

Could it be supposed that he assumed to pay a toll on freight which his steamers did not carry?

The Minister of the Interior *v.* Hackfeld et al.

Could it be supposed that he would have left the *rate* of storage not stipulated for ?

These reasons induce me to believe that Mr. Webb never signed this contract with the intention that this construction should be put upon those words.

The whole contract should be considered in determining any of its parts. 2 Parsons, p. 13 and Notes. 2 Story, S. 657 and Note.

The construction placed by the plaintiff upon the words in the contract, "the subject of steamship transportation," seems to me utterly at variance with that part of the contract which gives to the company the exclusive use of the storehouse.

"The last rule of interpretation is, that terms which are doubtful or ambiguous, are to be taken most strongly against the person engaging unless some wrong is thereby done." 2 Story, S. 662 and Note.

Even if it be held, that the words in the contract which provide that storage may be charged upon all merchandise which is not the subject of steamship transportation, should be considered as a limitation to the exclusive use of the storehouse, it seems clear to me that the construction now sought to be put upon them is altogether untenable.

Attorney General A. F. Judd for plaintiff.

C. C. Harris for defendants.